UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNIVERSAL SURVEY CENTER, INC., <br><br> Plaintiff, <br> v. <br><br> PRECISION OPINION, INC., <br><br> Defendant. | Civil Action No. _____ <br><br> **COMPLAINT FOR BREACH OF CONTRACT** |

This is an action for breach of contract under New York law, filed by Plaintiff, Universal Survey Center, Inc. ("Universal"), by and through its attorneys, Ice Miller, LLP. Plaintiff, by way of Complaint against the Defendant, states:

## THE PARTIES

1.      Plaintiff Universal Survey Center, Inc. ("Universal") is a Delaware corporation, which is and was at all relevant times duly authorized and licensed to conduct business in the State of New York. Universal's principal place of business is New York, New York.

2.      Defendant Precision Opinion, Inc. ("Precision") is a Nevada corporation, which transacts business in the State of New York. Precision's principal place of business is Nevada.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action under 28 U.S.C. § 1332, as the parties are citizens of different states, and the amount in controversy exceeds the sum of $75,000. This Court also has jurisdiction based on the Parties' own agreement as set forth in Section 5.08 of the Transition Services Agreement between the Parties dated July 20, 2016 (the "Transition Services Agreement"), which incorporates Section 15 of the Asset Purchase Agreement between the

Parties dated July 20, 2016 (the "Asset Purchase Agreement"). Both parties have copies of these agreements.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District; and because the Parties agreed to this Court's jurisdiction in Section 5.08 of the Transition Services Agreement, which incorporates Section 15 of the Asset Purchase Agreement between the Parties.

## FACTS

5.      Plaintiff Universal is engaged in the business of providing market research products, services or solutions, including proprietary panels or samples of respondents, programming and hosting, data collection, data processing, data analytic solutions, online custom reporting, and questionnaire design consultation for any consumer, business-to-business, or healthcare related areas of inquiry via the internet, mobile/wireless, telephone, in-person and mixed-access offerings. Among these products and services, Universal provides call center services.

6.      Defendant Precision is in the business of providing market research services, including both analysis and data gathering. Among these services that Precision provides includes call center services.

7.      In 2015, Universal determined that it would like to carve-out and divest itself of the telephone outbound call center portion of its business.

8.      On or around October 8, 2015, Precision sent Chong Moua, Chairman and Secretary of Universal, a Letter of Intent confirming that it was interested in acquiring Universal's call center assets. Precision revised the Letter of Intent on October 19, 2015. Both parties have a copy of the Letter of Intent.

9.      Keith Strassberg, President and Chief Technology Officer of Universal, and James T. Medick, President of Precision, both signed the Letter of Intent confirming that the Parties wished to commence due diligence with respect to Precision's proposed acquisition of Universal's call center assets (the "Acquisition"), and negotiation of a definitive written acquisition agreement for the Acquisition.

10.     As contemplated by the Letter of Intent, the Parties entered into an Asset Purchase Agreement dated July 20, 2016.

11.     The Asset Purchase Agreement was signed by Mr. Medick and Mr. Moua.

12.     Pursuant to the Asset Purchase Agreement, Universal agreed to sell and assign to Precision certain assets and liabilities of its business, namely, its call center business.

13.     In connection with the Asset Purchase Agreement, the Parties entered into a Transition Services Agreement, also dated July 20, 2016.

14.     The purpose of the Transition Services Agreement was so that Universal could provide certain services to Precision in order to ensure an orderly transition of the call center business from New York to Las Vegas, Nevada, over a period of ninety (90) days.

15.     The Transition Services Agreement was signed by James T. Medick, President of Precision, and Keith Strassberg, President of Universal.

16.     As laid out in Exhibit A to the Transition Services Agreement, the services Universal was to provide to Precision, and the prices thereof, included:

> (a) Execution and supervision of CATI (Computer Assisted Telephone Interviewing) interviews within Seller's call center at an hourly fee of $13.00 per hour; and
>
> (b) Supervision of the Services performed under the Agreement at an hourly fee of $200.00 per hour provided by Keith Strassberg; provided, however, that there shall be no charge for the first five (5) hours of Services provided by Keith Strassberg in each month.

17.     Precision further agreed to pay Universal for out-of-pocket costs under Section 2.02(a):

> the amount specified for each Service on such Service's respective Service Exhibit. In addition to such amount, in the event that Seller incurs reasonable and documented out-of-pocket expenses in the provision of any Service… Buyer shall reimburse Seller for all such Out-of-Pocket Costs in accordance with the invoicing procedures set forth in Section 2.02(b).

18.     Under Section 2.02(b) of the Transition Services Agreement, Universal was to bill Precision for the transition services on a bi-monthly basis via email, as outlined below:

> (i) Seller shall provide Buyer, in accordance with Section 5.01 of this Agreement, with bi-monthly invoices ("Invoices") via email, on the 15th and last day of each month, which shall set forth in reasonable detail the specific customer jobs services including, but not limited to hours provided and surveys completed along with amounts payable under this Agreement for each customer's job serviced for the specific period…

19.     Under Section 2.02(b) of the Transition Services Agreement, Precision was required to pay these invoices within thirty (30) days of their receipt, as follows:

> ii) payments pursuant to this Agreement shall be made within thirty (30) days after date of receipt of an Invoice by Buyer from Seller.

20.     Section 5.04 of the Transition Services Agreement provides that it is the sole and entire agreement between the Parties concerning the services and subject matter laid out in the Transition Services Agreement.

21.     Section 5.08 of the Transition Services Agreement and Section 15 of the Asset Purchase Agreement provide that any disputes are to be filed exclusively in the federal courts in New York, New York, and that the Parties consent and agree to the jurisdiction of the New York courts. The Parties further agreed to waive any right to trial by jury and agreed that the laws of the State of New York are to govern any contract dispute. Finally, the Parties agreed that should

litigation be commenced, the prevailing party shall be entitled to recover "its reasonable attorneys' fees, expert witness fees, litigation related expenses, and court and other costs incurred in such litigation or proceeding."

22.     On or around August 4, 2016, Universal provided Precision with the first invoice under the Transition Services Agreement, dated July 31, 2016 for the period of July 23, 2016 through July 31, 2016, in the amount of $90,356.15 (the "July 31 Invoice"). A true and correct copy of the July 31 Invoice is attached herewith as **Exhibit A.**  True and correct copies of additional invoices dated August 15, 2016 (the "August 15 Invoice"); August 31, 2016 (the "August 31 Invoice"); September 15, 2016 (the "September 15 Invoice"); September 30, 2016 (the "September 30 Invoice"); and October 20, 2016 (the "October 20 Invoice") are attached herewith as **Exhibits B, C, D, E and F**, respectively.

23.     The July 31 invoice was due to be paid in full by September 3, 2016.

24.     However, by September 3, 2016, Precision had still not paid the July 31 Invoice despite numerous attempts on Universal's part to confirm and obtain payment.

25.     On or around September 8, 2016, Mr. Strassberg contacted Bruce Baum, Precision's Chief Operating Officer and Chief Financial Officer, and Mr. Medick, via e-mail, to inform Precision that it was past due in its payments.

26.     Later that day, Mr. Strassberg spoke with Mr. Baum by telephone. Mr. Baum acknowledged that Precision had received the July 31 Invoice, but did not commit to when Precision would begin making payments.

27.     On or around September 12, 2016, Mr. Strassberg provided Mr. Medick and Mr. Baum with the five (5) days' prior written notice in order for Precision to cure its breach, as laid

out in Section 3.02 of the Transition Services Agreement. A true and correct copy of the prior written notice is attached herewith as **Exhibit G.**

28.      However, Universal did not receive a response from Precision during the cure period.

29.      Following the cure period, Precision continued to remain delinquent on its invoices from Universal, though Universal continued to provide services under the Transition Services Agreement.

30.      As provided for under the Transition Services Agreement, Universal continued to invoice Precision on a bi-monthly basis for services provided under the Transition Services Agreement.

31.      The invoice dated August 15, 2016 was in the amount of $189,969.00.

32.      However, Precision failed to pay the August 15 Invoice within thirty (30) days as required under the Transition Services Agreement.

33.      The invoice dated August 31, 2016 was in the amount of $213,987.75.

34.      However, Precision failed to pay the August 31 Invoice within thirty (30) days as required under the Transition Services Agreement.

35.      The invoice dated September 15, 2016 was in the amount of $184,788.50.

36.      However, Precision failed to pay the September 15 Invoice within thirty (30) days as required under the Transition Services Agreement.

37.      The invoice dated September 30, 2016 was in the amount of $160,030.00.

38.      However, as of the date of the filing of this Complaint, Precision has failed to pay the September 30 Invoice.

39.      The invoice dated October 20, 2016 was in the amount of $104,719.01.

40.     However, as of the date of the filing of this Complaint, Precision has failed to pay the October 20 Invoice.

41.     On or around August of 2016, certain post-transaction revenue amount of $127,268.24 was credited to Precision's account by Universal.

42.     On or around September 29, 2016, Precision paid $85,000 on its account.

43.     Therefore, the total amount owed to Universal by Precision under the Transition Services Agreement is therefore **$731,582.17.**

44.     Importantly, Precision has never disputed the validity of any of the invoices as required under Section 2.05 of the Transition Services Agreement:

> In the event of an Invoice dispute, Buyer shall deliver a written statement to Seller no later than ten (10) days prior to the date payment is due on the disputed Invoice listing all disputed items and providing a reasonably detailed description of each disputed item. Amounts not so disputed shall be deemed accepted and shall be paid, notwithstanding disputes on other items, within the period set forth in Section 2.02(b).

45.     Nor has Precision ever disputed the validity of any of the invoices in any other formal or informal manner.

## CAUSE OF ACTION

### Breach of Contract

46.     Universal incorporates the allegations contained in Paragraphs 1 through 45 above for its allegations of this Paragraph as though fully set forth and restated herein.

47.     The Transition Services Agreement is a binding contract supported by adequate consideration.

48.     Universal fully complied with all conditions precedent and otherwise fulfilled and satisfied all of its obligations under the Transition Services Agreement.

49.     Precision had no rights under the terms of the Transition Services Agreement to fail to pay the July 31 Invoice and the additional invoices that continue to be billed to it by Universal.

50.     Precision thereby breached the terms of the Transition Services Agreement.

51.     As a result of Precision's breach of the Transition Services Agreement, Universal suffered damages in the amount of **$731,582.17**, plus interest, costs and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Universal Survey Center respectfully requests that the Court enter an Order in favor of Universal Survey Center and award it damages in the amount of **$731,582.17,** plus interest, costs and attorney's fees, and that the Court grant Universal Survey Center all other relief that the Court deems just and equitable.

Dated: October 21, 2016                                     Respectfully submitted,

                                                            /s/ Heather Maly
                                                            ICE MILLER LLP
                                                            1500 Broadway, Suite 2401
                                                            New York, NY 10036
                                                            heather.maly@icemiller.com

                                                            200 West Madison Street, Suite 3500
                                                            Chicago, IL 60606
                                                            (312) 726-8107

                                                            *Attorney for Plaintiff*